**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE**

---

**KIMBERLY OWENS PEARSON,
JUSTIN J. PEARSON,
LAJUANA ABRAHAM,
JASMINE BERNARD BY AND
THROUGH HER GUARDIAN AD LITEM
JAMILLE HILL BERNARD,
AMBER SHERMAN, and KESHAUN
PEARSON,**

**Plaintiffs,**

**v.**

**Civil Action No. 2:26-cv-03358-TLP-tmp
JURY TRIAL DEMANDED**

**MEMPHIS CITY COUNCIL,
CITY OF MEMPHIS,
CHAIRWOMAN SWEARENGEN-WASHINGTON
IN HER OFFICIAL CAPACITY**

**Defendants.**

---

**RESPONSE IN OPPOSITION TO MOTION FOR
TEMPORARY RESTRAINING ORDER**

---

Come now Defendants, Memphis City Council and Chairwoman Swearengen-Washington, in her official capacity ("Council Defendants"), to respond in opposition the Plaintiffs' Motion for a Temporary Restraining Order and would show as follows:

## BACKGROUND

Plaintiffs filed the instant cause of action after business hours on Wednesday, October 14, 2026 asserting various claims for alleged violations of the First Amendment, pursuant to 42 U.S.C. section 1983. Along with the Complaint, Plaintiffs filed an emergency motion for a temporary

restraining order ("TRO"). In the Complaint, Plaintiffs request a "Temporary Restraining Order nullifying the bans issued to the Banned Plaintiffs and enjoining Defendants from enforcing the Speech Restriction Policy at future meetings." ECF No. 1, p. 19. In their motion for TRO, Plaintiffs seek a TRO (1) lifting the bans on Representative Justin J. Pearson, LaJuana Abraham, Jasmine Bernard …., Amber Sherman, and KeShaun Pearson prohibiting them from attending the October 20, 2026 Memphis City Council meeting at 4:00 PM CT and (2) enjoining Defendants Memphis City Council, City of Memphis, and Memphis City Council Chairwoman Swearengen-Washington in her official capacity from enforcing their Speech Restriction Policy. ECF No. 2.

## INTRODUCTION

The people of Memphis created the current mayor council form of government for the City of Memphis by referendum in 1965. They endowed the Council with all legislative powers and specifically granted the Council full power and authority to adopt rules and regulations pertaining to the conduct of its business. Pursuant to the authority granted by the citizens of Memphis, the Council adopted rules of procedure shortly after the first council was elected and have maintained those rules to the present day to govern the conduct of its business. As the title states, the Council's Rules of Procedure govern the procedure for actions taken in the Council's meetings. *See* ECF No. 1-9. Like virtually every municipal government in the state of Tennessee and nationally the rules adopted by the Council follow or incorporate Robert's Rules of Order in whole or part to govern their legislative proceedings. The Memphis City Council's rules are patterned after Robert's Rules of Order and specifically incorporate those rules to the extent that the Council's rules are silent on a parliamentary or procedural issue. The Council's Rules of Procedure are content neutral; they apply to all human beings irrespective of race, religion, sex or national origin. As its title suggests,

Robert's Rules of Order prescribed a system by which a deliberative society can decide questions affecting its business in an orderly manner.

Similar to Robert's Rules of Order, the Council's Rules of Procedure provides system by which the Council can decide questions affecting its business in an orderly manner. The Council publishes these rules on its website and requires any person other than a member who wishes to address the Council to acknowledge in a writing signed by such person that he or she is familiar with the Rules of Procedure and agrees to follow such rules and shall not engage in any disruptive conduct and that any violation of such rules may result in removal or suspension of the person's audience with the Council.

Essential to proceedings of any deliberative body is that someone has to be in charge of its meetings. That person is the presiding officer or chairman. The chairman is required to take charge of the assembly and ensure that its proceedings are conducted in an orderly manner. This is usually done pursuant to rules a procedure or rules of order adopted by the assembly to govern its proceedings. Fundamental to the conduct of an orderly proceeding is controlling who and when members and persons other than members are allowed to address the body. Virtually every deliberative assembly follows a few simple principles such as:

All persons, including members, seeking to address the assembly must be recognized first by the chairman or presiding officer before addressing or speaking to the body. Consequently, persons speaking without being recognized by the Chairman is permitted.

Only one member or person at a time may address the assembly unless permitted by the chairman or presiding officer such as in the case of a person translating statements for someone that does not speak the language used in the jurisdiction. Consequently, multiple persons speaking simultaneously or at the same time is not permitted and is out of order.

Members and persons addressing the assembly maybe limited by time and relevance of their speech to the matter being considered by the assembly. For example, only one member at a time may address the body; non-members are allowed two-minutes in the general comment portion of the meeting. Speaking longer than permitted is not allowed unless grace is extended by the chairman. When non-members are permitted to speak, their permission may be limited as to relevance to the matter being considered by the Council unless no matter is pending before the assembly at the time a person is allowed to speak.

Any unauthorized interference with the application of the rules of procedure or rules of order of any deliberative assembly necessarily impedes or interrupts the lawful business of that assembly. This especially true in the case of a governmental legislative body; such interference is contrary to the public's interests and causes injury not only to the legislative body and its members but also to the constituents that they represent.

**RELEVANT FACTS**

Chairwoman Jana Swearengen-Washington presided over the October 6, 2026 Memphis City Council meeting, which drew an unusually large crowd of approximately 400 attendees, including many individuals she had never seen at prior meetings.[1] During debate on Item 21, the proposed Data Center Moratorium Ordinance, Councilmember Carlisle’s remarks in support of a motion to hold the item were repeatedly interrupted by Amber Sherman and others in the audience, who would not permit him to speak. A threatening remark was made from the gallery, and even Councilwoman Green - who supported the moratorium - urged attendees to stop disrupting the proceedings, but her warnings were ignored.

[1] To the extent that Defendants’ summary of the Declaration of Chairwoman Swearengen-Washington fail to capture any pertinent facts, Defendants hereby adopt and incorporate the Declaration as if set forth herein verbatim.

After the Council voted to hold Item 21 until October 20, Sherman shouted profanity and accusations at Councilwoman Cooper-Sutton. Immediately thereafter, widespread disorder broke out. Attendees began chanting in unison, and several individuals used bullhorns, which are prohibited in the chambers. The Chairwoman believed the outburst appeared choreographed. She repeatedly struck the gavel and directed the crowd to stop and clear the room, but the disruption escalated.

Chairwoman Swearengen-Washington personally observed Plaintiffs L.J. Abraham, Amber Sherman, Keshaun Pearson, along with Brandi Price, actively leading and encouraging the disruption by raising their fists, shouting slogans such as "power to the people," and urging the crowd to intensify its conduct. Despite requests for assistance, neither security nor MPD could restore order, as the crowd refused to comply with verbal commands. The Chair recessed the meeting, but the chambers could not be cleared, and no further business could be conducted. The Council was unable to take up any of the remaining twenty-plus agenda items scheduled for that evening.

The Chairwoman observed that Justin Pearson did not attempt to stop the disturbance and later, based on video review, appeared to participate in the disruption and to address and encourage his supporters. Video evidence admitted into the record corroborates the events observed in the chamber, including the Plaintiffs' disruptive conduct and the inability of security personnel to regain control. Following the meeting, the Chairwoman instructed staff to identify individuals who took part in the disruption. Based on her personal observations and review of video evidence, she identified Plaintiffs Justin Pearson, L.J. Abraham, Amber Sherman, Keshaun Pearson, Jasmine Bernard, and Brandi Price as active participants. Acting within her authority as presiding officer, she suspended these individuals from attending the next two regular Council meetings. She

determined that the severity of their conduct and the likelihood of repeated disruption justified the suspension. Her decision was based solely on their behavior, not on their viewpoints or speech content. Notably, she herself voted against delaying the moratorium, consistent with the position favored by the suspended Plaintiffs.

**LEGAL STANDARD FOR TEMPORARY RESTRAINING ORDERS**

Federal Rule of Civil Procedure 65 (b) permits a court to issue a temporary restraining order ("TRO") without written or oral notice to the adverse party or its attorney if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and the movant's attorney "certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). "Decisions regarding a temporary restraining order are within the discretion of a district court." *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 558 F. Supp. 3d 561, 563 (W.D. Mich. 2021) "[T]he purpose of a TRO under Rule 65 is to preserve the status quo so that a reasoned resolution of a dispute may be had." *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 226 (6th Cir. 1996). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Reid v. Hood*, No. 1:10 CV2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of Cal. v. Orrin W. Fox*, 434 U.S. 1345, 1347 n. 2 (1977)). "If the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined, then there is cause to preserve the status quo." *Id*. (citing *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). In the Sixth Circuit, a court considering a request for injunctive relief weighs four factors: "(1) the plaintiff's likelihood of success on the

merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest." *Planned Parenthood of Tenn. & N. Miss. v. Slatery*, No. 3:20-CV-00740, 2020 WL 5797984, at *5 (M.D. Tenn. Sept. 29, 2020). Importantly, "[t]hese four considerations are factors to be balanced, not prerequisites that must be met. *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) (citing *McPherson v. Michigan High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 459 (6th Cir. 1997)). Each factor here favors Defendants.

## ARGUMENT

This Court should deny Plaintiffs' motion for a TRO because they are unlikely to succeed on the merits of their First Amendment claims, particularly as it relates to the claims in Counts V and VI, which are the only Counts challenging the City Council's suspension of Plaintiffs attendance at the October 20, 2026 regular meeting of the Memphis City Council. Plaintiffs are also unlikely to succeed on Counts I through IV, which pertain to the so called "speech restriction" policy. In addition, denial of the TRO will not result in any irreparable harm to these Plaintiffs but would protect the public and other third parties from substantial harm, such as the harm that occurred on October 6, 2026 as a direct result of the conduct of all Plaintiffs except for Plaintiff Pearson-Owens. Finally, the public interest is served by denying Plaintiffs' request for a TRO.

### A. Likelihood of Success on the Merits.

While the First Amendment generally protects the right to speak freely, that right "is not absolute, especially when a would-be speaker seeks access to government property as a platform for his speech." *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009). It is

well established that people may be removed from City Council meetings based on safety concerns or disruptive rule violations. There is ample federal case law recognizing that a presiding officer at a public meeting of a governmental body has the authority to maintain order and may lawfully restrict public speech in order to balance the competing interests of the speaker and his audience with the interests of the public body in conducting its meetings in an orderly and efficient manner. For example, rules and regulations found to be reasonable time, place and manner restrictions on speech include: requiring prior notification to the board, establishing fixed time limitations, or empowering the board to terminate speech which is profane, abusive, inflammatory, repetitive or disruptive. *Lowery*, 586 F.3d 427 (6th Cir.2009) (upholding pre-meeting sign-up, 5–minute time limit, and restriction of repetitive comments). The First Amendment of the United States Constitution provides that "Congress shall make no law ... abridging the freedom of speech." Nevertheless, First Amendment protection of freedom of expression is not inviolate; the U.S. Supreme Court has established that the "First Amendment does not guarantee persons the right to communicate their views at all times or in any manner that may be desired." *Heffron v. International Soc'y. for Krishna Consciousness*, 452 U.S. 640, 647, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981); *Lowery v. Jefferson Cty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009); *Jones v. Heyman*, 888 F.2d 1328, 1331 (11th Cir.1989). The extent to which the government may regulate speech depends on the context of the speech and the government's reasons for restricting the speech. *See Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 44, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983).

Sixth Circuit precedent has established that the City Council meeting at issue in this case falls in the middle. *See Lowery*, 586 F.3d at 432; *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 519 (6th Cir. 2019). While the Council meeting offers citizens a chance to express their views

to the Council, it cannot accommodate the sort of uninhibited, unstructured speech that characterizes a public park. *See City of Madison, Joint Sch. Dist. No. 8 v. Wis. Empl. Rel. Comm'n*, 429 U.S. 167, 175 & n. 8, 97 S.Ct. 421, 50 L.Ed.2d 376 (1976); *White v. City of Norwalk*, 900 F.2d 1421, 1425 (9th Cir.1990); *Jones v. Heyman*, 888 F.2d 1328, 1331–32 (11th Cir.1989) (per curiam). That is why courts call this sort of forum a "designated" and "limited" public forum: "designated" because the government has "intentionally open[ed]" it "for public discourse," *Cornelius*, 473 U.S. at 802, 105 S.Ct. 3439, and "limited" because "the State is not required to ... allow persons to engage in every type of speech" in the forum, *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 106, 121 S.Ct. 2093, 150 L.Ed.2d 151 (2001). In a limited public forum, a city may enforce a reasonable regulation of the "time, place, and manner" of expression whenever the excluded speech is "content-neutral" provided it is "narrowly tailored to serve a significant government interest" and it leaves open "ample alternative channels of communication." *Jones*, 888 F.2d at 1331 (finding a significant government interest in controlling the agenda and preventing the disruption of public meetings).

The Sixth Circuit Court of Appeals has expressly held that the government can even impose "reasonable restrictions based on speech content" in a limited pubic forum, "but it cannot engage in viewpoint discrimination." *Youkhanna*, 934 F.3d at 519. In determining whether a restriction is content-neutral, the Court's "controlling consideration" is the Council's purpose in limiting the Plaintiff's speech. *Jones*, 888 F.2d at 1331-32 (citing *Ward*, 491 U.S. at 791) As long as a restriction "serves purposes unrelated to the content of expression," it is content-neutral "even if it has an incidental effect upon some speakers or messages but not others." *Zapach v. Dismuke*, 134 F.Supp.2d 682, 690 (E.D.Pa.2001) (citing *Ward*, 491 U.S. at 791). A content neutral restriction is one that does not restrict "either a particular viewpoint or any subject matter than may be

discussed." *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1259 (11th Cir.2005) (citations omitted).

A recent opinion from the Western District of Michigan is instructive on many of the issues at issue in this case. In *Murray v. City of New Buffalo*, 708 F. Supp. 3d 1313 (W.D. Mich. 2023), city council meeting attendees brought a § 1983 action against the City, alleging that council rules prohibiting speakers at public meetings from making "derogatory or disparaging comments about any one person or group" and requiring comments to be "respectful" were facially unconstitutional under the First Amendment and had been applied in violation of their First Amendment rights. Addressing the facial challenge, the court granted summary judgment to the defendants, emphasizing the demanding standard applicable to such a claim: a "facial challenge requires the rule to be unconstitutional in almost all conceivable applications, 'to take the law off the books completely.'" *Murray*, 708 F. Supp. 3d at 1330.

Applying that standard, the court focused on the government's legitimate interest in preserving order and decorum during council meetings. As the court explained, "'[p]reservation of order in city council meetings to ensure that the meetings can be efficiently conducted' is a legitimate government interest." *Id*. at 1331 (quoting *Timmon v. Wood*, 316 F. App'x 364, 366 (6th Cir. 2007)). That interest, the court concluded, was consistent with the Sixth Circuit's decision in Ison. Although Ison invalidated restrictions on certain forms of speech, it expressly cautioned that its decision should not be read to mean that "regulations guarding against actual ad hominem attacks, even verbal, are not permitted in a limited public forum." *Id*. (quoting *Ison v. Madison Loc. Sch. Dist. Bd. of Educ*., 3 F.4th 887, 894 n.1 (6th Cir. 2021)). Nor does the need for a presiding officer to exercise judgment in enforcing a decorum rule render the rule invalid. Indeed, Ison upheld the "reasonable decorum" component of the policy at issue even though that standard

necessarily required some interpretation by the presiding officer. *Murray*, 708 F. Supp. 3d at 1331. Against that backdrop, the Murray court concluded that the challenged provisions represented a permissible effort to regulate meeting decorum: "The prohibitions on derogatory, disparaging, and disrespectful language are not based on the speech's content, but rather on a reasonable need for decorum in a meeting." *Id*.

Further, future, or prospective bans are not categorically prohibited. While the Sixth Circuit has not addressed this issue, other Courts of Appeals have approved such bans. *See, e.g., Lovern v. Edwards*, 190 F.3d 648, 650-52 (4th Cir. 1999) (holding that an indefinite ban from all school board property was constitutional due to the plaintiff's "pattern of verbal abuse and threatening behavior towards school officials"); *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 140-45 (3d Cir. 2017) (affirming the district court's grant of qualified immunity to school officials who barred the plaintiff from school board property indefinitely because his conduct was "intolerable, threatening and obnoxious" and he was "interfering with the function of the School Board").

Here, the Plaintiffs did not engage in protected speech during the October 6, 2026 meeting. In a limited public forum governed by rules of order, speech made outside those rules—such as shouting from the audience or refusing to yield the floor—is not protected expression but disruptive conduct. As the court explained in *Murray*, while criticism of public officials lies at the core of the First Amendment, that protection does not extend to conduct that violates reasonable procedural rules or disrupts the orderly conduct of a public meeting. *Murray*, 708 F. Supp. 3d at 1331-1332. No public comment period had begun when Plaintiffs initiated the disruption. Their refusal to comply with directives to restore order forced Council members, staff, and members of the public to evacuate the chambers. Plaintiffs effectively commandeered the meeting space and

attempted to transform it into an open, unregulated forum. They had no right to do so. Such conduct is inconsistent with reasonable time, place, and manner rules and may also constitute violations of criminal laws, including trespass and breach of the peace. The First Amendment does not provide a license to intimidate, threaten, or coerce others, particularly during an official meeting of a legislative body.

In Count V, Plaintiffs argue that their suspension from two subsequent Council meetings constitutes viewpoint discrimination. They are unlikely to succeed on this claim. Here, unlike in *Murray* where the mayor misapplied the rules to silence criticism, the City's enforcement was based solely on Plaintiffs' disruptive behavior and refusal to comply with meeting procedures. *Murray* confirms that such conduct is not constitutionally protected and may be sanctioned without violating the First Amendment. As discussed herein, the suspended individuals did not engage in protected speech but in disorderly conduct that violated Council rules and shut down the meeting, prompting the dispatch of more than twenty police officers. Their suspension letters identify disorderly conduct, not any substantive viewpoint, as the basis for discipline. Moreover, the Chairwoman who issued the suspensions publicly supported the policy position advanced by the suspended Plaintiffs, undermining any claim of viewpoint-based animus.

Count VI alleges First Amendment retaliation. This claim likewise fails on the merits. Plaintiffs did not engage in protected expression at the October 6 meeting, and the suspensions were an appropriate, even restrained, response to conduct that disrupted official proceedings and prevented further business that evening.

Accordingly, because Plaintiffs' conduct constituted disorderly behavior that impeded the meeting, rather than protected expression, they cannot demonstrate a likelihood of success on the merits under the standards articulated in *Murray*.

As a final matter, Defendants note that the "claims" pertaining to Plaintiffs Sherman and Owens-Pearson, as set forth in paragraphs 38–47 of the Complaint, are barred by the applicable statute of limitations. Tennessee's one-year limitations period applies to § 1983 claims. Under federal accrual principles, the Sixth Circuit has held that "the statute of limitations begins to run when the plaintiff has 'a complete and present cause of action.'" *Reguli v. Russ*, 109 F.4th 874, 879 (6th Cir. 2024). *Reguli* specifically applied this rule in the context of a First Amendment claim, confirming that accrual does not wait for discovery of motive or additional facts once the injury is known. *Id.* at 879–84. Sherman's allegations arise from events in March and April 2023, and Owens-Pearson's allegations arise from conduct in August 2025. ECF No. 1, pp. 8-10. Plaintiffs did not file suit until October 13, 2026, well outside the one-year limitations period.

### B. SUBSTANTIAL HARM TO OTHERS

Granting the injunction would cause substantial harm to others, including Council members, staff, and members of the public who are entitled to attend Council meetings without fear of intimidation or disorder. Every member of the public has the right to participate in Council meetings under the established time, place, and manner rules and to express their views without being threatened, shouted down, or placed in physical danger.

The video recordings of the October 6, 2026 meeting show that Plaintiff Sherman initiated out-of-order verbal attacks on Council members in response to debate on Item 21. This conduct immediately precipitated a takeover of the Council Chambers and the surrounding hallway by a crowd of hundreds, led by these Plaintiffs. News media footage captured a physical altercation occurring steps outside the chamber doors.[2] Numerous attendees reported feeling unsafe following

[2] https://youtu.be/zEexYTSPTpA?si=SLPUljXT_Xwx9qqH

the incident. This conduct had, and continues to have, a chilling effect on the speech rights of other citizens. No reasonable attendee who held a viewpoint contrary to Plaintiffs and their followers would feel safe expressing that view during public comment. Plaintiffs have demonstrated a repeated unwillingness to comply with the procedural rules governing recognition, decorum, and time limits, creating an environment where only their preferred viewpoints can be expressed without fear of reprisal.

The harm to others is not speculative. Members of the public at the October 6, 2026 meeting reported fear and concern arising from the suspended Plaintiffs' behavior. Granting an injunction that would immediately return the suspended Plaintiffs to the Council chambers without consequence would expose Council members, staff, and the public to renewed risk and would undermine the orderly operation of future meetings. Plaintiffs, who repeatedly identify themselves as community activist leaders, used that position to mobilize and direct the crowd in ways that escalated tension and ultimately shut down the meeting. The harm inflicted on others on October 6, 2026 demonstrates why injunctive relief in Plaintiffs' favor would jeopardize, rather than protect, the rights and safety of the broader public.

### C. Public Interest

The public interest weighs heavily against granting the requested injunction. The Memphis City Council is the legislative body of the City of Memphis; and, its meetings exist for the purpose of conducting the people's business. The public relies on the Council to address, debate, and resolve the matters on its agenda, matters that affect public safety, municipal services, economic development, budgeting, and countless other aspects of civic life. When the Council is unable to carry out these responsibilities, the public suffers directly.

On October 6, 2026, no legislative business was conducted because Plaintiffs' conduct made it impossible for the Council to continue the meeting. The chambers were overtaken, order could not be restored, and the meeting was forced to adjourn without addressing any agenda items. Such an interruption undermines the public's interest in the effective operation of its government and erodes confidence in the Council's ability to deliberate free from intimidation or chaos.

Maintaining order during legislative proceedings is, itself, a compelling public interest. Plaintiffs' conduct on October 6 was not merely disruptive; it escalated to the point of arguable criminality. *See* Tenn. Code Ann. § 39-17-306; § 39-17-305. Their suspension from the October 20, 2026 meeting is a reasonable and narrowly tailored measure designed to restore order, protect the safety of those in attendance, and ensure that the Council can perform its essential public functions. Granting an injunction would risk further disruption, compromise public safety, and impede the Council's ability to govern. The public interest demands the preservation of orderly, accessible, and functional legislative meetings, not their subversion by individuals unwilling to comply with established rules of procedure.

### D. Irreparable harm

Plaintiffs contend that any restriction on their ability to speak at a Council meeting constitutes irreparable harm, relying on the familiar principle that "the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Ison v. Madison Local Sch. Bd.*, 395 F. Supp. 3d 923, 939 (S.D. Ohio 2019). However, as *Ison* also makes clear, this presumption does not apply automatically. Where a plaintiff cannot demonstrate a likelihood of success on the merits, "the argument that he or she is irreparably harmed by the deprivation of his First Amendment rights also fails." *Id.* (citing *McNeilly v. Land*, 684 F.3d 611, 621 (6th Cir. 2012)). Because the instant Plaintiffs are unlikely to succeed on the merits for the

reasons discussed above, including that their conduct on October 6, 2026 was not protected speech in a limited public forum, they cannot rely on the First Amendment presumption of irreparable harm.

Defendants submit that the challenged suspension is not unreasonable under the circumstances, and therefore, Plaintiffs are not irreparably harmed by denial of their request for a TRO. Plaintiffs' suspension is temporary, limited to denial of attendance at two Council meetings, and tailored to address the severe disruption they caused. Plaintiffs retain ample alternative channels to communicate their views to Council members and the public, including email, telephone, written submissions, and advocacy outside the chambers. Importantly, they are not barred from City property, nor are they prohibited from expressing their viewpoints publicly in any other forum.

**CONCLUSION**

For the foregoing reasons, Plaintiffs have not demonstrated any of the prerequisites for the extraordinary remedy of a temporary restraining order. They cannot show a likelihood of success on the merits because their conduct constituted disruptive behavior outside the protections of the First Amendment, and the City's enforcement of its rules was a permissible exercise of meeting decorum. They likewise cannot establish irreparable harm, because there is no irreparable harm in the absence of likely success on the merits and because their temporary suspension from two meetings is narrow, time-limited, and leaves open ample alternative channels for expression. The balance of harms and the public interest also weigh decisively against injunctive relief, as the City has a compelling interest in preserving order, safety, and the ability to conduct its legislative business without disruption. Accordingly, the Motion for Temporary Restraining Order should be denied.

Respectfully submitted,

**THE WADE LAW FIRM, PLLC**

_/s/ Brandy S. Parrish________
ALLAN J. WADE (4339)
BRANDY S. PARRISH (21631)
5050 Poplar Avenue, Suite 1028
Memphis, Tennessee 38157
(901) 322-8005
awade@thewadefirm.com
bparrish@thewadefirm.com
Attorneys for Memphis City Council
Chairwoman Swearengen-Washington

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document has been served on all counsel of record, by electronic means of filing with this Court's CM/ECF System on this 17th day of October 2026.

/s/ Brandy S. Parrish
Brandy S. Parrish