**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

---

**KIMBERLY OWENS PEARSON,**
**JUSTIN J. PEARSON,**
**LAJUANA ABRAHAM,**
**JASMINE BERNARD BY AND**
**THROUGH HER GUARDIAN AD LITEM**
**JAMILLE HILL BERNARD,**
**AMBER SHERMAN, and KESHAUN**
**PEARSON,**

**Plaintiffs,**

**v.**

**Civil Action No. 2:26-cv-03358-TLP-tmp**
**JURY TRIAL DEMANDED**

**MEMPHIS CITY COUNCIL,**
**CITY OF MEMPHIS,**
**CHAIRWOMAN SWEARENGEN-WASHINGTON**
**IN HER OFFICIAL CAPACITY**

**Defendants.**

---

**DECLARATION OF JANA SWEARENGEN-WASHINGTON**

---

I, Jana Swearengen-Washington, a duly elected member of the Memphis City Council and the duly elected and acting chairman of the Memphis City Council for the calendar year 2026. I do hereby state under penalty of perjury based on my personal knowledge as follows

1. I presided over the Regular meeting of the Memphis City Council that began at about 4:15 PM on October 6, 2026. When the meeting started there were approximately four hundred persons in attendance. I had never seen so many people attend a council meeting. There were hundreds of young people in the audience that I had never seen before.

2. At the request of one or more members, I called Item 21 [Data Center Moratorium] out of its normal order for consideration by the body. As it turned out that was a mistake. Item 21 was Substitute Ordinance No. 5982. Councilwoman Greene moved adoption of the substitute ordinance and Councilman Smiley seconded the motion. Councilman Smiley discussed his reasoning for presenting the moratorium ordinance. Other Council members discussed and debated the item. After considerable discussions by the members, Council member Carlisle made a procedural motion to delay Item 21 until October 20; he indicated that the reason for his motion was that the Council was going to begin a series of internal work sessions to become more informed on the Council's authority to regulate Data Centers and to develop an ordinance to implement a process for review and mitigation of Data Center impacts. He indicated that even if the motion to hold passed that vote would not prevent those that had filled out comment cards from speaking after the result of the vote was announced.

3. Councilman Carlisle attempted to complete his comments on his motion to hold but was interrupted repeatedly by Amber Sherman and others in the audience, who refused to allow him to express his opinions about the moratorium and his view on the best path forward. When Councilman Carlisle tried to continue to discuss his views on Data Centers, someone from the audience made a threatening remark to which Carlisle stated "he would not be threatened." Even Councilwoman Green, a sponsor of the moratorium, verbally warned those who were being disruptive to stop their outbursts because she didn't want them cleared out of the chambers. Her pleas were ignored.

4. After the debate closed on the motion to hold Item 21 until October 20 2026, I called for a vote on the motion. When the result of the votes revealed that the motion to hold had been approved by the members, I declared the Motion to approved and that Substitute Ordinance No. 5982 would be held until October 20, 2026. I then asked vice Chairman Carlisle if we were still doing comments. We had received over forty (40) comment cards for Item 21/Data Center Moratorium. Within minutes after I announced the result of the vote to hold Item 21, Amber Sherman shouts from her chair in the audience "I told ya'll Cooper Sutton was full of Sh*t—she did all that that talking and voted against it." Councilwoman Cooper-Sutton responded. by advising Ms. Sherman that she was not afraid to defend herself against Ms. Sherman's threats.

5. Shortly after the exchange between Sherman and Cooper-Sutton ended, chaos erupted and members of the audience began to loudly chant slogans in unison.

I was astonished that the mass disorderly protest was being led by several people with bullhorns, which were not allowed in the chambers. It is my opinion that these verbal outbursts had been choregraphed in advance of the meeting. I remained at my seat and continued in vain to restore order. I repeatedly banged my gavel and demanded the participants stop their disruptive behavior and clear the room to no avail. I personally observed LJ Abraham, Amber Sherman, Keshaun Pearson and Brandi Price actively participating in the riot by raising their fists and yelling slogans like "power to the people." LJ Abraham, Amber Sherman, Keshaun Pearson and Brandi Price were actively encouraging persons in the audience to continue and even ramp up their disorderly conduct. The participants ignored my requests. I asked for security and police on the record. Ultimately, I was advised that it would take some time for security and MPD to clear the chambers, because the persons causing the disturbance would not comply with verbal commands to vacate the chambers. On advice of counsel, I announced on the reoord that the meeting would be recessed until 6:30 that evening.

6. I fully intended and expected that we would resume the Council proceedings that night since we had not taken up any of the other 20 plus items on our agenda due to the interruption of the disorderly protest. After waiting for more than 30 minutes, security and MPD had not cleared the chambers; the protests appeared to be continuing at the same level. Also, it appeared that MPD had decided not to physically engage with the protestors due to their large number and instead decided to focus on providing security and protection for the Council members, Council staff and other attendees who had business on our regular agenda

7. Once the rioting started after I announced the vote to hold the moratorium ordinance, I did not observe Justin Pearson make any attempt to stop the rioting or even advise his brother to stop participating in it. Mr. Pearson represented himself as the leader of the movement against data centers and for the moratorium. In my opinion the overwhelming number of attendees in the audience were his supporters and that he and others associated with him in his movement were present at his request. It is also my opinion that Mr. Pearson had the power and the ability with his self-proclaimed rhetorical prowess to shut the riot down, but for some reason made no effort whatsoever to do so. In fact, our subsequent review of the video of the entire incident and cellphone videos reflect that Mr. Pearson actively participated in the disturbance as he admitted to the Council on October 8th. These videos also

reflect that Mr. Pearson at some point addressed his supporters in the room, who stopped their protests to listen to their leader. Some even videoed the address with their cellphones, Pearson appears to praise his supporters for their protests that evening and encouraged them to return and continue to have their voices heard.

8. As Chairman of the Council, I had a duty to maintain order in the Chambers during Council meetings so that the Council can transact business in an orderly fashion. I determined that the Council should discipline any person who actively engaged in conduct that led to the interruption of the October 6, 2026 meeting. I instructed my staff to positively identify in the video any person who actively participated in the riot. The staff showed me video evidence of all persons they could positively identify to were engaged in disruptive conduct; these persons were Justin Pearson, LJ Abraham, Amber Sherman, Keshaun Pearson, Jasmine Benard and Brandi Price. I had personally witnessed LJ Abraham, Amber Sherman, Keshaun Pearson, and Brandi Price engaged in disruptive conduct during the meeting.

9. As chairman I alone made decision to sanction the above-named persons from further audience before the Council for the next two (2) regular meetings as a result of their disruptive behavior on October 6, 2026. It was and is my opinion that anyone that would actively engage in such disorderly and disruptive conduct was highly likely to repeat that conduct to shut down the next two (2) Council meetings where the data center moratorium may be considered. My decision was based solely on the named person's conduct in disrupting the October 6 meeting and was not based on prior history or the content of their speech. Notably, no one formally addressed the Council on October 6 and I am on record as having voted against a delay on the moratorium; a result that Pearson and his followers wanted. While some of these persons may have been disciplined by prior chairmen, I have not suspended or disciplined anyone for speech or conduct during my tenure. I have only provided gentle warnings. This incident is different and, in my opinion, deserve a severe sanction for completely stopping a lawfully noticed Council meeting.

SO ENDS DECLARANT'S STATEMENT.

/s/ ***Jana Swearengen-Washington***
JANA SWEARENGEN-WASHINGTON

DATE: October 17, 2026

Jana Swearengen-Washington

Respectfully submitted,

**THE WADE LAW FIRM, PLLC**

/s/ Allan J. Wade
ALLAN J. WADE (4339)
BRANDY S. PARRISH (21631)
5050 Poplar Avenue, Suite 1028
Memphis, Tennessee 38157
(901) 322-8005
awade@thewadefirm.com
bparrish@thewadefirm.com
Attorneys for Memphis City Council
Chairwoman Swearengen-Washington

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing document has been served on all counsel of record, by electronic means of filing with this Court's CM/ECF System on this 17th day of October 2026.

/s/ Allan J. Wade