**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE MEMPHIS DIVISION**

| | |
|---|---|
| **KIMBERLY OWENS-PEARSON, JUSTIN J. PEARSON, LAJUANA ABRAHAM, JASMINE BERNARD BY AND THROUGH HER GUARDIAN AD LITEM JAMILLE HILL BERNARD, AMBER SHERMAN, KESHAUN PEARSON,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**MEMPHIS CITY COUNCIL, CITY OF MEMPHIS, CHAIRWOMAN SWEARENGEN-WASHINGTON IN HER OFFICIAL CAPACITY,**<br><br>*Defendants*. | Case No.:<br>2:26-cv-03358<br><br>JURY DEMAND |

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER**

For the following reasons, Plaintiffs' request to lift the meeting ban and enjoin the City Council's speech policy should be granted.[1]

**A. Defendants' Factual Narrative Is Inaccurate, Lacks Context, and Fails to Support Their Legal Arguments.**

First, Defendants suggest that the bans are necessary because "anyone that would actively engage in such disorderly and disruptive conduct was highly likely to repeat that conduct." (ECF No. 23 at ¶ 9.) This stated motivation is undermined by the fact that three Plaintiffs—Amber Sherman, KeShaun Pearson, and Justin J. Pearson—attended the October 8 meeting and gave public comment without incident. *Compare* Memphis City Council, *City Council Full Meeting* (Oct. 8, 2026), https://memphis.granicus.com/player/clip/10909?view_id=6&redirect=true (speaking at 1:21:15-1:23:22 (Sherman); 1:23:45-1:27:10 (J. Pearson); and 1:27:34-1:29:17 (K. Pearson) (demonstrating proper behavior and following of the rules of decorum during the October 8 public comment period) *with* (ECF No. 22 at 5-6) ("[Chairwoman Swearengen-Washington] determined that the . . . likelihood of repeated disruption justified the suspension.")

Second, Defendants mischaracterize the events of October 6: Plaintiffs did not engage in incitement[2] or make any true threats.[3] (ECF No. 23 at ¶¶ 3-4 (suggesting that Sherman threatened

[1] Lifting the meeting ban is a proper remedy. *See e.g.*, *McBreairty v. Sch. Bd. Of RSU 22*, 616 F.Supp.3d 79 (D. Me. 2022) (granting a temporary restraining order enjoining a school board from enforcing an 8-month ban that prohibited plaintiffs from entering school property or attending any school board meeting or school-related function); *see also Brown v. City of Jacksonville, Fla.*, 2006 WL 385085 (M.D. Fla. 2006) (similar); *Vollmecke v. Indep. Sch. Dist.*, 2023 WL 11200382 (W.D. Mo. 2023) (similar).

[2] The *Brandenburg* test precludes a finding of incitement because Plaintiffs' (1) speech did not explicitly or implicitly encourage the use of violence or lawless action, (2) Plaintiffs had no intent that their speech would yield such a result, and (3) such action was not likely to the result from the speech. *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 246 (6th Cir. 2015) (citing *Brandenburg v. Ohio*, 395 U.S. 444, 447 (2002)). The hostile reaction of a crowd cannot transform protected speech into incitement. *Id.*

[3] "True threats are serious expression[s] conveying that a speaker means to commit an act of unlawful violence." *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (internal quotations and

a Councilmember and that Plaintiffs led "mass disorderly protest" and "rioting")). Notably, Defendants fail to identify any utterance by any Plaintiff fitting the legal definition of a true threat or incitement. Defendants use the term "riot," but Plaintiffs did not harm any people or property.

Third, Defendants' allegations about Plaintiff Representative Justin J. Pearson demonstrate the unconstitutional targeting of a movement leader for the actions of others. (*See* ECF No. 23 at ¶ 7) (assigning responsibility to Representative Pearson for the protest despite not observing him engaging in disruption); *but see NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908 (1982) ("The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected.").

**B. Defendants Engaged in Selective Enforcement.**

The Banned Plaintiffs are likely to succeed on the merits of their Selective Enforcement claim.[4] Despite there being over 400 protestors at the meeting, only six attendees were banned. *See Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023) (Opinion of Rao, J.) ("We may reasonably infer from the Foundation's complaint . . . that its members were similarly situated to other protesters who were not arrested.")

*Tamm v. Nerad* is particularly illustrative. 2025 WL 2674302 (6th Cir. 2025). There, plaintiffs brought a selective enforcement claim against a Zoning Administrator for issuing citations to plaintiffs, but not "'dozens of other' similarly situated dock owners . . . who 'flouted the ordinance,' because they alone had sued him" in the past. *Id.* at *6. The court concluded that the plaintiffs, as former litigants, belonged to an identifiable group exercising their First

---

citation omitted). "[J]ests, 'hyperbole,' or other statements that when taken in context do not convey a real possibility that violence" cannot constitute true threats. *Id.*

[4] Defendants fail to address this argument in their reply. Defendants' counsel conceded at the Status Conference (Oct. 16, 2026) that Banned Plaintiffs were targeted because they were known to City Council.

Amendment rights. *See id*. at *9 (citing *United States v. Anderson*, 923 F.2d 450, 453 (6th Cir. 1991)). In finding selective enforcement, the Court paid close attention to three factors: (1) The temporal proximity between the citations and a previous lawsuit; (2) defendant's failure to issue citations to other similarly situated individuals; and (3) defendant's antagonizing behavior toward plaintiffs. *See id*. at *7. Here, all Banned Plaintiffs were known to the Council for past advocacy. Multiple plaintiffs faced direct antagonizing behavior from Councilmembers. By banning only six individuals—but not any of the other 394 attendees—City Council engaged in selective enforcement.

**C. Defendants' Ban Is Unconstitutional Retaliation.**

The Banned Plaintiffs are likely to succeed on the merits of their First Amendment retaliation claims because of Defendants' plainly "disparate treatment of similarly situated individuals." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999). Defendants' arbitrary targeting of social justice leaders is further evidence of retaliatory animus.

All Banned Plaintiffs engaged in prior advocacy at public meetings. (J. Pearson Decl. ¶ 2); (Bernard Decl. ¶ 2); (K. Pearson Decl. ¶¶ 2-3); (Sherman Decl. ¶¶ 2-4); (Abraham Decl. ¶¶ 2-3.) This protected conduct motivated Defendants' ban. During the October 6 meeting, Councilmember Carlisle said "we see the same people here all the time" and described the Banned Plaintiffs as "professional advocates." Memphis City Council, *City Council Full Meeting* (Oct. 6, 2026) https://www.youtube.com/watch?v=1SHov0hrkss&t=5926s (speaking at 56:26-56:35). Councilmembers mentioned the Banned Plaintiffs by name during the meeting. *Id.* at 57:12-57:16. The public advocacy that made the Banned Plaintiffs previously known lies at the core of the First Amendment's protections. *See, e.g.*, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911 (1982).

On similar facts, a federal district court ruled in favor of an individual removed from a public meeting for protected activity occurring outside the meeting. *See Murray v. City of New Buffalo*, 708 F. Supp. 3d 1313, 1332–33 (W.D. Mich. 2023). The mayor cited the plaintiff's "online performances" when ejecting him. *Id.* at 1332. The court concluded that "the mayor silenced speech based on viewpoint by prohibiting any speech that had as its subject comments that criticized a sitting city council member." *Id.* at 1333. Because "[t]he right to criticize public officials, within bounds, is a core right protected by the First Amendment," expelling an individual for activity outside of a public meeting violates the First Amendment. *Id.* at 1333.

Defendants have conceded that the bans stem, at least in part, from the Banned Plaintiffs' previous protected activity. Absent this activity, Defendants would not have been able to identify and bar the Banned Plaintiffs; instead, they would have been treated like the other attendees who faced no discipline. ECF No. 23 at ¶ 8 (requesting that staff review the videos to "positively identify" individuals). This is precisely the "disparate treatment of similarly situated individuals" that constitutes retaliation. *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999).[5]

**D. Defendants' Unconstitutional Speech Restriction Policy Should Be Enjoined.**

Each part of Defendants' Speech Restriction Policy fails constitutional muster. Gossip and personal attacks are protected speech. *See, e.g.*, *Blanchard v. Augusta Bd. of Educ.*, No. 1:26-CV-00049-SDN, 2026 WL 1133727, at *9 (D. Me. Apr. 27, 2026) ("[T]o determine what counts as 'gossip,' [ ] 'openly invites viewpoint discrimination.'" (internal citations omitted)); *MacQuigg v. Albuquerque Pub. Schs. Bd. of Educ.*, No. CV 12-1137 MCA/KBM, 2015 WL 13659218, at *4

[5] Targeting movement leaders to punish them for illegal acts of a larger group is unconstitutional. *See Claiborne Hardware Co.*, 458 U.S. at 908 ("The right to associate does not lose all constitutional protection merely because some members of the group may have participated in conduct or advocated doctrine that itself is not protected.").

(D.N.M. Apr. 6, 2015) ("discriminating between attacks—unfavorable or critical comments—and neutral or favorable comments" is unconstitutional). Abusive speech is protected. *Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Schs.*, 118 F.4th 1324, 1335 (11th Cir. 2024) ("[T]he Board's policy on 'abusive' speech is facially unconstitutional." (internal citation omitted)). Vulgar speech as well. *McBreairty v. Sch. Bd. of RSU 22*, 616 F. Supp. 3d 79, 90 (D. Me. 2022) (allowing comments that "reference sexual conduct, [that] are not appealing to any prurient interest and are offered to make a political or philosophical point"). Allegedly slanderous or defamatory speech cannot be restricted. *Merriott v. City of Bossier City*, 179 F.4th 393, 411 (5th Cir. 2026) ("[P]rohibitions against . . . 'slanderous' speech are viewpoint based.").

**E. Plaintiffs Satisfy All Elements for a Temporary Restraining Order.**

Having demonstrated a likelihood of success on the merits, there is a presumption of irreparable harm. *See generally Ison v. Madison Local Sch. Bd.*, 395 F. Supp. 3d 923 (S.D. Ohio 2019). Defendants have no legitimate interest in enforcing unconstitutional restrictions, and preliminary relief would preserve opportunities for public participation without depriving Defendants of their ability to conduct Council proceedings. *See Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982). Preserving all voices is in the public interest. *City of Madison, Joint Sch. Dist. No. 8 v. Wisconsin Emp. Rels. Comm'n*, 429 U.S. 167 (1976) ("To permit one side of a debatable public question to have a monopoly in expressing its views to the government is the antithesis of constitutional guarantees."). Because Plaintiffs' "message does not fall into one of the recognized categories of unprotected speech the message does not lose its protection under the First Amendment due to the lawless reaction of those who hear it. Simply stated, the First Amendment does not permit a heckler's veto." *Bible Believers v. Wayne Cnty., Mich.*, 805 F.3d 228, 252 (6th Cir. 2015).

Respectfully submitted,

/s/ Jennifer Safstrom
Jennifer Safstrom
Ryan Riedmueller
Camelia Assadian*
Sam Sidle*
Stanton Foundation First
Amendment Clinic
Vanderbilt University Law School
131 21st Avenue South
Nashville, TN 37203
ryan.riedmueller@vanderbilt.edu
jennifer.safstrom@vanderbilt.edu

*Student practice form forthcoming

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document has been served on all counsel of record, by electronic means of filing with this Court's CM/ECF System on this 18th day of October 2026.

/s/ Jennifer Safstrom
Jennifer Safstrom